(No. 13777.—Judgment reversed; award set aside.)

THE LAWRENCE ICE CREAM COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.—(THE CHICAGO SAVINGS BANK AND TRUST COMPANY, Admr. Defendant in Error.)

*Opinion filed April 21, 1921—Rehearing denied June 21, 1921.*

1. WORKMEN'S COMPENSATION—*when judgment for award will be reversed on evidence.* A judgment confirming an award for the death of an employee who dies of acute nephritis and uræmia within a month after receiving slight injuries from a fall will be reversed, where the evidence shows that he suffered from bronchial and kidney trouble several months before the accident and where the doctors who treated him before and after the injury testify that there was no relation between the accident and the disease.

2. SAME—*opinion of expert witness should be based upon the evidence.* A physician who testifies as an expert in answer to a hypothetical question as to the relation between an injury and a disease from which an employee dies should base his opinion upon the evidence, and an opinion that the accident might have caused the disease if the employee was in good health at the time of the accident is not admissible, where the evidence shows that the employee was not in good health at that time.

3. SAME—*when death of teamster is not caused by accidental injury.* The death of a teamster within a month after he sustained slight injuries from a fall when he was attempting to get down from his truck will not be regarded as the result of the accident, where the evidence shows that the death was the result of a disease which had no connection with the injuries sustained.

4. SAME—*stenographic report filed in time may be authenticated later.* If the stenographic report of the proceedings before the arbitrator is filed with the Industrial Commission within the thirty days' extension granted for that purpose it may be corrected and authenticated after the expiration of such time.

5. SAME—*circuit court may allow Industrial Commission to correct return to writ of certiorari to show complete record.* The circuit court may enter an order authorizing the Industrial Commission to withdraw its return to the writ of *certiorari* and make corrections or additions so as to show a complete record of the proceedings before the commission in accordance with the facts.

FARMER and THOMPSON, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

JOHN A. BLOOMINGSTON, for plaintiff in error.

CRUICE & LANGILLE, (A. S. LANGILLE, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Charles J. Riley was employed by the plaintiff in error, the Lawrence Ice Cream Company, to drive a two-horse truck and deliver ice cream in the city of Chicago, making about thirty stops each day and making collections for ice cream delivered. On February 7, 1917, he stopped the truck near a sidewalk and stepped down from the wagon on a spoke of a wheel and slipped and fell backward to the sidewalk, causing bruises upon his legs and a bruise on his back. He continued his work for a few hours and afterward gave instructions to his helper, who delivered ice cream in his place, and he made some collections and received other collections from the helper until about February 13 or 14, when he went to bed at home and on February 21 went to the Mercy Hospital. On March 3 he died, and the defendant in error, the Chicago Savings Bank and Trust Company, having been appointed administrator of his estate, made application for compensation for his death. The arbitrator made an award and it was confirmed by the Industrial Commission. On a writ of *certiorari* from the circuit court of Cook county the award was again confirmed and an application to this court for a writ of error was allowed.

Plaintiff in error presents several reasons for seeking a reversal of the judgment, but the only one which will be considered is whether the evidence, with all the inferences

which could be justifiably drawn therefrom, was sufficient to sustain the judgment.

The hospital record showed that Riley died of acute nephritis and uræmia, and at least several months before the accident he suffered from and was treated for kidney trouble, and every doctor who saw or treated him, either at home or at the hospital, testified that there was no connection between the accident and his death. There were three such doctors, and one of them testified that he treated Riley in September, 1916, when he had kidney trouble, and treated him again at the time of the injury before he went to the hospital, and he then had bronchial trouble and kidney trouble, and that the bronchial-kidney condition was not the result of any accident. He said that there were abrasions on Riley's thigh and legs and an abrasion around the small of his back, but his death had no connection with the injury sustained on February 7. A statement signed by the same doctor was also introduced in evidence, in which he stated that the death of Riley had no connection with the injury. Another doctor who treated Riley at the hospital testified that there was no relationship between the accident and the nephritis, of which he died; that if it had been supposed that there was any relation between the accident and death he would have caused an inquest to be held, but did not because there was no ground for such a supposition. He said there was absolutely no evidence of internal injuries, and in answer to a hypothetical question said that he did not believe the injury had anything to do with Riley's death. Another doctor who saw Riley at the hospital on March 2 and examined him said that he found him very sick, lying in bed in a semi-conscious condition; that he should say that bronchial nephritis had been running at least many months, and in answer to the hypothetical question said that in his opinion death was not due to the injury. The nurses at the hospital testified that

Riley had bruises on his legs and some bruises on his back; that he had hemorrhoids and his bowel movements contained a large amount of blood, and that he continually grew weaker and before he died was delirious. The evidence was that the kidneys did not discharge through the bowels, and the great amount of blood discharged came from hemorrhoids. Three doctors testifying as experts, in answer to a hypothetical question embracing the facts, confirmed the testimony of the doctors who treated Riley. One of them testified that such an accident as Riley suffered would not produce bronchial nephritis and gave his opinion that he did not die as a result of the accident. Another said that he did not find any causal connection between the fall from the wagon and the death, and the third doctor said that the accident would not produce the condition from which Riley died.

It is contended that there was some evidence in the record, which, considered by itself, would sustain the award, and that the court is bound to accept it as true. The evidence which is pointed out for that purpose consists of the testimony of two doctors giving opinions as experts, one of whom said that acute nephritis might be set up by trauma, but it was not very common; that bruises would have to be of great severity to affect organs inside of the body, and for the purpose of his opinion he assumed that Riley was in absolutely good health at the time he fell and acute nephritis was of short duration. His opinion was that under such conditions acute nephritis might have been set up by the fall, but according to his testimony it was unlikely, and the assumption that Riley was in absolutely good health at the time of the fall was contrary to the evidence. The opinion was no more than that there was a possible connection between the accident and death, and being based upon a hypothesis unsupported by any evidence it was not admissible. The other doctor who it is said gave testimony sufficient to sustain the award was asked the hypothetical

question put to the other doctors, and this was his answer: "I have looked at the hospital record. My opinion is, if the chronic condition of the kidney existed, or an acute condition, that injury which he sustained was sufficient to cause the trauma and the shock received by the system to lower his metabolism and his resisting power vitality to such a degree as ordinarily known among the medical profession as congestion or inflammation that has been brought about by trauma, shock or injury or otherwise from blows from without. That being the case, there is no question in my mind but what the injury relegated to and assisted the patient to deplete in vitality instead of gain; and furthermore, I believe that the mentality as shown by the hospital report, his mental derision,—they had to put him in a straight jacket,—certainly shows that it was above the normal or ordinary type of mental derangement. I reached the conclusion that the death was superinduced by the fall. The fall led up to his death and increased the likelihood of his death." The answer was very far from being even an opinion that the death of Riley was caused by the fall from the wagon, but it amounted only to an opinion that the trauma and the shock received by the system would lower vitality and power to resist the disease which Riley already had, so as to make recovery less probable. There was a complete failure to prove that the death of Riley was caused by the accident.

The defendant in error has assigned cross-errors on the record, based on the refusal of the circuit court to hold that the award of the arbitrator became the decision of the Industrial Commission under section 19 of the Workmen's Compensation act, because no agreed statement of facts appearing upon the hearing before the arbitrator, nor any correct stenographic report of the proceedings at such hearing, had been filed with the commission within the time fixed by the statute. The motion was supported by the affidavit of the attorney for the applicant made before the

Industrial Commission. The record does not show the date of the service of notice on the plaintiff in error of the entry of the award, but the petition for review was filed on November 16, 1917, and within twenty days thereafter an additional period of thirty days was allowed for filing a stenographic report. On December 7, 1917, within the time extended a stenographic report was filed but it was not authenticated, and when the case came before the Industrial Commission on January 27, 1918, a motion was made that the award of the arbitrator should be held final. The affidavit in support of the motion shows that the report had been taken by an inexperienced stenographer, and it was withdrawn, amended and modified and was authenticated by the arbitrator on March 20, 1918. There was no express ruling by the Industrial Commission on the motion, but it was disregarded and the award was confirmed. The circuit court entered an order authorizing the Industrial Commission to withdraw its return to the writ of *certiorari* and to make corrections or additions so as to show a full and complete record of proceedings before the commission, and this was done. The report was filed within the time extended, as provided by statute, but was corrected and authenticated afterward, and that might lawfully be done. (*Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 454.) There was no error in permitting the authentication nor in allowing the commission to withdraw the return and amend it to correspond with the facts. . .

The judgment is reversed and the award set aside.

*Judgment reversed; award set aside.*

FARMER and THOMPSON, JJ., dissenting.