(No. 24200.—

THE MT. OLIVE & STAUNTON COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CURT FLESCHIG, Defendant in Error.)

*Opinion filed December 15, 1937—Rehearing denied Feb. 2, 1938.*

MACDONALD, MEYER & MEYER, for plaintiff in error.

GEORGE W. DOWELL, and C. C. DREMAN, for defendant in error.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

In the course of his employment on December 16, 1926, Curt Fleschig, a loader in the mine of the Mt. Olive & Staunton Coal Company, sustained an inguinal hernia on the left side. He was operated on four days later by Dr. C. H. Zoller. On March 17, 1927, he returned to work for two and one-half days when he felt a stinging pain in his left groin. He did not work again until October 6; from that date he worked until March 12, 1928, when, while using a bar, he again felt the pain in his left groin and ceased work. Dr. Zoller examined him on March 14 and found a recurrence of the hernia and again operated on March 22. Dr. Zoller saw him on June 13 and again

on September 18, when he found a lump the size of a hen egg in Fleschig's left groin. A month later this doctor advised another operation, and saw Fleschig again on January 2, 1929, when he found he then had a hernia the size of a goose egg on the left side.

March 27, 1927, Fleschig filed an application for adjustment of claim against the company under the Workmen's Compensation act, asking for compensation for the injuries suffered December 16, 1926. Following a hearing before an arbitrator on January 25, 1929, an award was made February 9, which found Fleschig totally disabled. The commission reviewed the case May 20, 1929, and on August 8 rendered its decision. It found that, subsequent to the accident, Fleschig had undergone two operations to cure the hernia but it had reappeared. It held that since the evidence offered before the arbitrator showed that another operation was necessary, the employee should submit to this third operation. It suspended his compensation payments. January 6, 1930, Dr. Fred W. Bailey, a St. Louis surgeon, performed the operation. Dr. Bailey examined Fleschig again on April 1 and found the wound was healing perfectly. About November 6, 1930, he was again sent to Dr. Bailey who then found indications of a hernia and recommended an immediate operation.

On December 8, 1930, there was a further hearing, on review, before the Industrial Commission. March 25, 1931, the commission filed a new decision, finding that, after the third operation, the employee's disability had recurred and increased. It suspended his compensation until he submitted to a fourth operation which had been tendered by the petitioner. February 13, 1935, the commission held a further hearing, on review, and on April 4 entered a finding that the fourth operation was not successful and did not relieve the workman of his disability. It also found that, as a result of the accidental injury of December 16, 1926, Fleschig was wholly and permanently incapable of

work and entitled to $14 per week until $3750 had been paid and, thereafter, to a pension for life at the rate of $25 per month. On *certiorari* the circuit court of Macoupin county, on September 11, 1935, set the decision aside and remanded the cause to the Industrial Commission for additional evidence as to applicant's disability. Pursuant to this order the commission held additional hearings ending September 7, 1936, and, ten days later, rendered its decision finding the employee was wholly and permanently incapable of work. It awarded him $3750, at the rate of $14 per week, payments to begin March 2, 1934, and a pension for life at the rate of $25 per month, after the weekly payments were completed. When the cause was removed to the circuit court of Macoupin county by *certiorari,* that court on April 5, 1937, confirmed the decision and the findings of the commission. The cause is here by writ of error.

The question is, did the testimony show a permanent, total disability or merely a permanent, partial disability? Fleschig did not testify at the hearings before the commission in 1936, but did testify before the arbitrator in January, 1929, and before the commission in December, 1930. His testimony was that he had been unable to do work of any kind since he ceased work in the mine March 12, 1928; that he still had a stinging pain in his groin and that if he attempted to do "any lifting, reaching or anything" it caused severe pain in the region of his hernia; that he could not wear a belt because if he did it "protrudes through, down."

Dr. Zoller testified on the hearing before the arbitrator in January, 1929, and again, before the commission, in 1936. He performed the first two operations. At the first hearing he said he was satisfied he could cure the hernia by another operation and that the injury "is a place where a truss will not be satisfactory for him, and he is certainly not able to work in the condition he is in." Be-

fore the commission, in 1936, he said he had examined Fleschig in February and found a recurrence of the hernia in the upper part of the operative scars but this condition could be taken care of by wearing a truss or binder; that, if so fitted, he could do any ordinary light work that did not require much lifting, but he should not attempt any heavy manual labor, even with a truss.

Dr. Fred W. Bailey had performed from two to four thousand hernia operations in the past twenty-five years. He had performed the last two operations on Fleschig and testified that recurrent hernias are usually difficult to repair with assurance, because the normal tissues are not there after one or two operations; that a properly fitted truss might give him relief in this case but he doubted it very much; that this hernia would gradually get larger and be more or less of a constant menace. He said there was no way of determining, in advance, whether recovery from an operation would permit Fleschig to perform physical labor.

Dr. Edward F. Sullivan testified that he had examined Fleschig in 1934 and again in January, 1936; that at the time of the last examination he found a bulging non-reducible mass about the size of a walnut at the upper end of numerous operative hernia scars. He expressed the opinion that Fleschig could do no work requiring any exertion on the abdominal part of his body, but might do work which involved moving about, getting on street cars and in automobiles. In his opinion another operation would do little good and if Fleschig wore a truss or binder it would have to be an extensive affair and very carefully prepared so that it would fit very tight.

Dr. C. L. Vanatta testified he had been on the staffs of the Alton and Elgin State Hospitals since 1930, and that he had formerly engaged in private practice; that Fleschig became a voluntary patient at the Alton State Hospital May 29, 1936, and remained there in custodial

care until he was discharged as unimproved on August 29; that he had examined and treated him and taken a history of his injury and operations; that the patient had a nervous condition and was classified as a psycho-neurotic, or neurasthenic type; that he had ideas as to bodily ailments and that he then had a hernia at the outer end of the scars. He expressed the opinion that, from his observation, there was a connection between the patient's nervousness and the fact that he had a hernia and had been operated on. He believed Fleschig was physically able to do some light work but probably could not do any work, except under supervision.

Arthur C. Woods, claim adjuster for the company, testified that in February, 1936, he offered Fleschig a job at $4.50 a day, which he declined. The job was to pick impurities, slate and sulphur from coal, and in the performance of his duties he would be required to stand on a runway twelve to eighteen inches wide beside a shaker table three feet wide, from 7:00 A. M. to 11:00 A. M. and from 11:30 A. M. to 2:30 P. M. He would be required to reach over this table and to pick up pieces not less than three inches nor more than six inches in diameter.

After each of the four operations undergone by Fleschig the operating surgeon discharged him as cured. The physicians were not in entire accord as to his total disability, and Dr. Vanatta, who last treated him, qualified his opinion that he might be able to do light work, by saying he was unfitted to do even that without supervision. He further said that Fleschig was classified in the hospital as a psycho-neurotic and that, from his own observation, there was a connection between his nervousness and the fact he had a hernia and that his condition did not improve in the three months in 1936 this doctor was observing and treating him.

Although Fleschig received the assurance that each of the operations would cure him, and even though he has

done no work since March, 1928, he still has a hernia. After the four operations had been performed, Dr. Zoller testified that Fleschig could do light work if fitted with a truss or binder. This statement, however, is directly contrary to his testimony before the arbitrator, following the second operation. He then stated that Fleschig's condition could only be relieved by another operation and the hernia "is a place where a truss will not be satisfactory for him, and he certainly is not able to work in the condition he is in." The testimony of the other physicians on that subject was that a truss would help somewhat, if one could be properly fitted to him, but the evidence indicates that getting one to fit him properly and sufficiently tight would be problematical. Fleschig, himself, said he could not wear a "belt" because if he does "it protrudes through, down."

The company contends that Fleschig has not maintained the burden of proof required of him by law to establish his alleged total incapacity. It insists the record shows he is only partially incapacitated, and that under the decisions of this court in *Fullerton Fuel and Supply Co.* v. *Industrial Com.* 343 Ill. 53, and *Golconda Portland Cement Co.* v. *Industrial Com.* 322 id. 364, the judgment should be reversed. In the former case the employee had received a head injury but was able to drive his car, and of the five physicians who had examined him and testified, two expressed the opinion that applicant could do any kind of light work where stooping was not required, and the other three said he was able to resume his usual employment. In the latter case, the injury complained of was a hernia for the relief of which no operation had been performed, and, subsequent to the injury, applicant was unable to do a full day's labor but had worked at hauling coal, sand and gravel, manure, wood and brush and trimming trees. He had applied for a job as a school janitor and as chief of police. Findings of total incapacity in

580

those cases were reversed because they were manifestly against the weight of the evidence.

The factual question relating to the extent and permanency of an employee's injuries is for the determination of the Industrial Commission. It is not within the province of this court to substitute its judgment for that of the commission unless it is satisfied the finding of the commission is manifestly against the weight of and has no substantial foundation in the evidence. *LaSalle County Carbon Coal Co.* v. *Industrial Com.* 356 Ill. 421; *Ford Motor Co.* v. *Industrial Com.* 355 id. 490; *Allen Son & Co.* v. *Industrial Com.* 349 id. 71.

Here, we find no reasonable ground for disturbing such findings. Fleschig's disability resulting from the injuries has existed for almost ten years. A remedy is afforded the employer if his condition should improve. *Ford Motor Co.* v. *Industrial Com. supra.*

The judgment of the circuit court of Macoupin county is affirmed.

*Judgment affirmed.*