(No. 29465.—

OLIN INDUSTRIES, INC., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PAUL WEESE, Plaintiff in Error.)

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

MEYER & MEYER, of East St. Louis, for plaintiff in error.

VERLIE, EASTMAN & SCHLAFLY, and EMERSON BAETZ, both of Alton, for defendant in error.

Mr. JUSTICE FULTON delivered the opinion of the court:

A writ of error was granted in this case to review the judgment of the circuit court of Madison county. Upon

a hearing the arbitrator made an award in favor of plaintiff in error, Paul Weese, and against the defendant in error, Western Cartridge Co. (now Olin Industries, Inc.) in the sum of $21.15 per week for 29 4/7 weeks for temporary total disability and the further sum of $600 for medical and hospital expense. On appeal to the Industrial Commission this award was set aside and an award made in favor of Weese allowing him compensation in the sum of $21.15 per week for 41-5/7 weeks for temporary total disability and the additional sum of $600 for medical and hospital services. The circuit court of Madison county, on *certiorari,* reversed and set aside the decision of the Industrial Commission and entered judgment for the defendant in error.

The plaintiff in error contends that the decision of the Industrial Commission was supported by competent evidence and that the circuit court erred in holding such decision to be contrary to the manifest weight of the evidence and in reversing and setting it aside. It is his claim that he was injured by reason of an accident arising out of and in the course of his employment on October 6, 1943.

Weese testified that he was 31 years of age and had three children under 16 years of age. He had been employed by the Western Cartridge Company for a period of six years. He had sustained an injury to his back on January 8, 1942, and was absent from work until March 24, 1942. From that date until October 6, 1943, with the exception of five days in July when he was absent from his work on account of his back, he worked for nearly twenty months without losing any time and was able to do his work during all of that period.

On the date of the injury of October 6, 1943, he was placing insulation on a steel pipe located about five feet above the roof of the company's plant, and while so employed he started to get down from the pipe to the roof when his foot slipped and he reached back and grabbed

with his arms while his feet went down on the slate roof. When he got down on the roof his back was hurting so bad he could not stand on his feet. He laid down on the roof for half an hour because he could not get up. At the end of that time he got up and went to the company first aid where he told the company physician, Dr. Montgomery, that he had hurt himself on the roof of the plant about 45 minutes before that time. It was then 10:30 A.M. Dr. Montgomery told him Dr. McCuiston would be there at two o'clock and for him to come back. When he saw Dr. McCuiston the latter asked him if he had been wearing his belt which the company supplied at the time of his former injury. From that point on Dr. McCuiston took care of him. He could not get out of bed the next morning and on the fourth day after the accident the doctor sent an ambulance after him and took him to the company's office. The doctor told him to lie on a hard bed and also gave him an order for a new belt. He went back home and went to bed, and it was 12 days before he was able to get up. Dr. McCuiston sent the ambulance for him on another occasion and then sent Weese to St. Joseph's hospital in Alton and there put a plaster cast on his body from the arms down to the hips. He wore that seven days but it did not do him any good and the doctor cut it off. It was then about time for a compensation check and he went down to see Joe Stephan, the supervisor of compensation for the company, and was told he had nothing coming; that his injury was caused from his prior accident which had been settled and they did not have to pay anything like that. Also, that the company would not have to doctor him. Dr. McCuiston had made an appointment for him to see a specialist in St. Louis but later cancelled the appointment. He was still suffering and unable to get around so he employed a lawyer who sent him to Dr. Fritsch, a bone specialist in East St. Louis. This doctor sent him to a hospital where he remained 24 days. Dr.

Fritsch operated on his spine and was still treating him at the time of the hearing. After the operation he gradually recovered and commenced work with the Shell Oil Company on July 24, 1944.

Dr. Fritsch testified that he first saw Weese on November 7, 1943. At that time he was walking with a marked limp and had a severe sciatic limitation of motion of the spine. He had severe sciatica and flexion contracture of the hip. He had atrophy, that is, his leg was smaller. The pelvis was tilted, which caused the shortening of about an inch of the left leg and he had scoliosis of the back because of the sciatica. There was one inch of atrophy of the left thigh and a half inch of atrophy of the left calf.

After examination and treatment Dr. Fritsch diagnosed Weese's condition in simple language as a pressure on the spinal cord and recommended surgery to correct the difficulty. Weese was not improving and decided to submit to an operation. A little later the operation was performed by removing a hypertrophied ligamentum flavum. After three weeks in the hospital Weese was relieved of the pain he had had. It was the doctor's opinion that the condition might have been or could have been caused by a fall or a trauma, and it might have been or could have been aggravated by a second fall or trauma. He further testified that Weese would probably have some disability; that the leg would always be a little shorter than the other, and would probably always have some limp. He estimated the fair and reasonable charges for his professional services at the sum of $400 and $200 as a fair and reasonable charge for the hospital. On cross-examination he testified the scoliosis was a combination of both injuries. He stated: "The thing that pointed indisputably to the second accident was that the patient was in pain and showed more than you would expect of a chronic affair." In his testimony he advanced further reasons as to why he thought the first injury had partially healed; why he thought something

had happened to aggravate the condition and what caused the shortening of one inch in Weese's left leg.

Defendant in error offered the deposition of H. R. McCarroll, an orthopedic surgeon in Missouri, who examined Paul Weese at the request of the company on October 2, 1944, and had only seen him the one time. He attributed the condition in Weese's lower left extremity to a congenital anomaly. He said that this congenital anomaly could be aggravated by an injury such as Weese described; that if the ligamentum flavum was hypertrophied, it could have been aggravated by the fall described, but that there were no truly objective signs attributable to traumatic injury.

Defendant in error insists that the commission's finding that the employee sustained accidental injuries on October 6, 1943, was against the manifest weight of the evidence and also that the commission erred in finding that notice was given of the injury on that date. Also, that there was no proof of objective signs or symptoms of an injury on October 6, 1943, and that Weese was not incapacitated from work as a result of the alleged injury. Further that there was no demand made on the employer for medical attention.

It appears to be their position that Weese was injured January 8, 1942, and had received full medical attention and compensation and that the present case is simply an effort to get paid over again for the original accident. It insinuates that Weese has fabricated the second injury to furnish the basis for his demand and that all of his difficulties were congenital even with the first accident.

As to the question of notice Weese testified positively that he notified Dr. Montgomery and Dr. McCuiston on the day of the accident that he had suffered an injury and applied to them for medical aid. The doctors do not positively deny his statement but say they do not remember and that no record was made of such report. Weese also

notified Joe Stephan and the latter denies that Weese made complaint about a new injury in October of 1943. Weese was treated by Dr. McCuiston until further medical aid was denied him. The Industrial Commission had the advantage of seeing these witnesses while they were testifying and observing their manner and demeanor on the stand. Both the arbitrator and the Industrial Commission decided this question of fact in favor of Weese and must have believed that he was telling the truth. All of the surrounding circumstances appear to corroborate that finding.

The other material conflict in the evidence is confined to the testimony of the attending surgeon and the medical expert produced by the company. Such condition presents a question of fact for the commission. For the court to adopt the view of either side on that question would require the court to say which of the two medical witnesses is more worthy of belief and whose evidence is entitled to the greater weight. That being the function of the commission, the court will not disturb its conclusion unless its finding on that question is manifestly against the weight of the evidence. *Buda Co.* v. *Industrial Com.* 377 Ill. 215.

In *Consolidated Coal Co.* v. *Industrial Com.* 320 Ill. 171, the following statement was approved from the opinion in *Consolidated Coal Co.* v. *Industrial Com.* 311 Ill. 61; "where the facts are controverted and the determination of the disputed question of fact depends upon the credit to be given contradictory testimony, the courts will give due weight to the finding of the commission, which is qualified by experience and special study to weigh facts applicable to cases within its jurisdiction." Other similar holdings are *Rodriguez* v. *Industrial Com.* 371 Ill. 590; *National Malleable and Steel Castings Co.* v. *Industrial Com.* 377 Ill. 169.

It has been held by this court that where an employee suffers a disability and has a pre-existing malady which is

aggravated or accelerated by the accidental injury, such disablement is caused by the accidental injury and the employee is entitled to compensation. *Great Lakes Supply Co. v. Industrial Com.* 309 Ill. 68; *Powers Storage Co. v. Industrial Com.* 340 Ill. 498.

The proof that Weese worked steadily prior to the date of the injury and that for a long period of time after the accident was unable to perform any manual labor was a fact to be considered by the commission in determining whether or not the disability was due to the injury received on October 6, 1943. In *Hansell-Elcock Co. v. Indus. Com.* 376 Ill. 151, we held: "The rule has been well established that it is the province of the Industrial Commission to draw reasonable inferences and conclusions from the evidentiary facts, and the courts are not privileged to set aside the findings of the commission unless they are manifestly against the weight of the evidence. (*Olympic Commissary Co. v. Industrial Com.* 371 Ill. 164; *Czerny v. Industrial Com.* 369 id. 275; *International Sales Co. v. Industrial Com.* 365 id. 436; *Board of Education v. Industrial Com.* 362 id. 263.)"

If the testimony of the plaintiff in error be taken as true, there was sufficient evidence to sustain the decision of the commission, and where the testimony is merely conflicting as here and not contrary to the manifest weight of the evidence, its decision should not be disturbed.

We cannot say that the award of the Industrial Commission in this case is contrary to the manifest weight of the evidence, nor can we say that the award of the commission was not supported by competent evidence.

The judgment of the circuit court of Madison county is reversed, and the cause remanded, with directions to confirm the award of the Industrial Commission.

*Reversed and remanded, with directions.*