HARDY, Judge.
This is a compensation claim in which plaintiff alleged permanent total disability and sought an award of $30 per week for 400 weeks. After trial there was judgment rejecting plaintiff’s demands, from which he prosecutes this appeal.
The facts involved appear to be well established with little, if any, dispute. Plaintiff was employed as a roll finisher by defendant at a weekly wage of approximately $52. Plaintiff was a diabetic and had suffered from this disease for a period of some thirteen years prior to the injury hereinafter related. According to the medical testimony plaintiff had a gangrenous condition of the left leg which had endured for a considerable period of time, and his physician, who was the company doctor, testi- *804 fled it was a foregone conclusion that this condition would eventually develop to a point which would necessitate amputation. The doctor explained that meanwhile they were attempting to keep plaintiff steadily employed on the job until such a condition occurred when amputation could no longer be delayed. Acting upon his physician’s advice plaintiff had submitted to a lumbar sympathectomy which however appeared to produce no favorable result. At intervals ulcers developed' on the left foot arid leg. ■
At about 2:00 A. M.- on July 1, 1952, plaintiff and a fellow employee were engaged in pushing a heavy roll of paper weighing approximately three or four thousand pounds when plaintiff’s left foot broke open, causing severe pain and discomfort. Plaintiff immediately quit work, reported to the first aid station at the plant, and was sent home, later visiting the company doctor at the hospital, at which time it appears he made no complaint to the doctor of any accidental injury and the doctor does not remember that he complained of the condition of his foot, although he testified he might have dressed the foot despite the fact he had no record of such procedure. On July 6th plaintiff was admitted to the hospital where he remained until July 29th when the leg was amputated.
There is only one issue here concerned and that is whether plaintiff has sustained the burden of proof in establishing by a preponderance of the evidence a disability resulting from an employment accident.
Examination of the record discloses that plaintiff has satisfactorily established the fact that the ulcerated condition of the ball of the left foot had completely healed at the time of the alleged accident. And we think plaintiff has proved the bursting of his foot at the time and under the circumstances related, for his testimony on this point is thoroughly corroborated by two fellow employees who observed plaintiff’s condition and who testified that immediately after the occurrence the sock on plaintiff’s left foot was observed to be soaked with blood. As do whether or not the happening constituted an accident, we think the conclusion is inescapable, from any reasonable viewpoint, that the strain under which plaintiff labored in moving the heavy roll of paper was responsible for the breaking open of the ball of his left foot, which was already in a seriously weakened condition due to the disease from which he suffered. In our opinion this can only be regarded as a contributing factor to the exaggeration of the effects of the disease which, by a natural chain of circumstances, led to the necessary amputation of the leg. It is quite true that this same result might have transpired under other entirely normal conditions completely unrelated to his employment. So might a man break a leg while walking down the stairway of his home, but if it is broken while he is employed in his customary occupation the benefits of the compensation statute must apply.
It is strenuously urged on behalf of defendant that the amputation was inescapable and that it would have been necessitated in the ordinary progressive course of plaintiff’s diabetic condition. Conceding this to be true, it does not militate against the conclusion that the injury directly resulting from plaintiff’s employment hastened the performance of the drastic operative procedure.
While we find no Louisiana authority which is directly in point, we are impressed with the similarity of factual and legal issues in Gudeman Co. v. Industrial Commission, 399 Ill. 279, 77. N.E.2d 807, decided by the Supreme Court of Illinois in 1948.
Because ■ of this striking similarity we quote the opinion of the cited case in full as follows:
“This is a writ of error to review the judgment and order of the superior court of Cook County, which reversed and set aside the action of the Industrial Commission allowing compensa-1 tion to plaintiff in error, Bessie Schneider, as widow of John Schneider, deceased.
“John Schneider had been afflicted with diabetes for about 20 years prior *805 to October 3, 1944. In 1938 he received an injury to one of the toes on his left foot and soon thereafter his left leg was amputated above the knee and an arti- . ficial limb was substituted therefor. On October 3, 1944, and long prior thereto, he was employed by defendant in error in its assembly department. On said last-mentioned date while in the line of duty he bumped his toe on a heavy metal pan causing an injury thereto from which complications developed. Soon after the injury, the company nurse applied medication and bandaged the big toe and the one next to it. The same night he complained to his wife that his foot felt cold and did not seem to have proper circulation. The bandage remained on for a few weeks and then the company doctor removed it. His wife then noticed that there was a crack or cut on the bottom of his foot at the great toe. The foot was medicated by both Schneider and his wife from time to time. On November 4, 1944, when he came home from work his stocking was wet and there was pus oozing out of the cut underneath the toe. He continued medication until November 6, 1944, when a doctor was summoned and prescribed treatment. This doctor attended Schneider every day until November 11 when it seemed the cut was healing and thereafter the doctor saw him every third day until November 22 when the condition became serious and a progressive gangrene was discerned. Schneider was then taken to the hospital and on November 24 his right leg was amputated above the knee. On December 21, 1944, he was taken home in a wheel chair. Beginning with January S, 1945, he complained of a terrible headache. On January 7 he was again taken to the hospital and his death occurred on the 10th of that month from cerebral thrombosis.
“The only fact in dispute is whether or not there was a causal connection between the injury and the death. There was a series of occurrences beginning with the injury on October 3, 1944, which progressed to the time of Schneider’s death. . First there was the injury, then a break in the skin; then pus, then gangrene, followed by amputation and the return home in about three weeks. Two weeks later severe headaches began and death followed three days later.
“Defendant in error contends no causal connection was shown- between the injury and-the death. Dr. Paul, Buey testified on behalf of defendant in error that in his opinion there was. no connection between the alleged injury of October 3 and Schneider’s death on January 10. Dr. Eric Oldberg testified for the plaintiff in error ■ giving' as.his definite opinion that Schneider-had a very serious, difficulty which necessitated amputation of the leg, which .was bad for his general condition and that there was a lessening of the physical . resistance which is very -much a contributing cause to thrombosis. This doctor gave as his opinion that there was a possible causal relationship between the injury and the patient’s death from cerebral accidents. The law is that testimony as to mere possibilities is insufficient to sustain an award under the Workmen’s Compensation Act. Sears, Roebuck & Co. v. Industrial Commission, 334 Ill. 246, 165 N.E. 689; Standard Oil Co. v. Industrial Commission, 322 Ill. 524, 153 N.E. 660; Lawrence Ice Cream Co. v. Industrial Commission, 298 Ill. 175, 131 N.E. 369.
“The evidence, however, is not in conflict as to the sequence of occurrences from the time of the injury to the death. The Industrial Commission made its findings upon all the facts in the case. There was substantial evidence upon which the commission could base its opinion. Neither the superior court nor this court may substitute its judgment for that of the commission, unless the finding of the commission is manifestly against the weight of and has no substantial foundation in .the, evidence. Olin Industries, Inc. v. Industrial Commission, 394 Ill. 593, 69 *806 N.E.2d 305; De Bartolo v. Industrial Commission, 375 Ill. 103, 30 N.E.2d 677; DeCarrion v. Industrial Commission, 370 Ill. 474, 19 N.E.2d 329; Mt. Olive & Staunton Coal Co. v. Industrial Commission, 367 Ill. 574, 12 N.E.2d 664.
“We cannot say that the finding in this case is manifestly against the weight of the evidence. The finding of the commission will therefore be sustained, the judgment of the superior court reversed, and the award of the Industrial Commission confirmed.”-
The only distinction between the Illinois case and the one under consideration is the difference between an injury resulting from humping a toe and one resulting from the breaking open of a foot as the result of strain and pressure. It is to be observed that the opinion discussed the principle identical with that which has been many times enunciated by the courts of this state to the effect that mere possibility is not sufficient to sustain an award. In the instant case we do not think the evidence adduced on behalf of plaintiff can be dismissed as mere possibility or even probability. To the contrary we think plaintiff has made out and established a consistent causal connection between the occurrence of July 1st, which must be considered as an accident, and the amputation of his leg.
Under this finding, and convinced of the justice of this conclusion, we must hold that the judgment of the trial court reflects manifest error.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of plaintiff, Grady Ray, and against the defendant, International Paper Company, for compensation at the rate of $30 per week, beginning July 1, 1952, and continuing for the duration of disability not exceeding 400 weeks, with interest at the rate of 5% per annum on past-due payments from the dates due until paid, subject to credit for any payments heretofore. made, together with all costs.
Attorney’s fees payable to counsel for plaintiff are fixed and approved at twenty percent of all amounts to be paid, provided, however, that the maximum of said payments shall not exceed one thousand dollars.