HARDY, Judge.
This is a compensation case in which plaintiff claimed total permanent disability by reason of the amputation of his left leg allegedly necessitated as the result of an accident sustained while in the course and scope of his employment. Made defendants were United Gas Corporation, plaintiff’s employer, and its insurer, Fidelity & Casualty Company of New York. After trial there was judgment in favor of defendants rejecting plaintiff’s demands, from which he prosecutes this appeal.
Plaintiff alleged that he sustained an accidental injury on or about June 3, 1952, when a buggy loaded with heavy material was accidentally pushed against his left heel; causing injury thereto; that his left heel and foot began to swell and pain to such extent that he was forced to quit work on or about June 18, 1952; that he was taken from his job to.his home where he remained until he entered the Wright-Bendel Clinic in Monroe on June 28th, where his condition was diagnosed as diabetic gangrene of the left foot as the result of, which amputation of his left leg was effected. Plaintiff supplemented his original petition to the extent of 'specifically alleging:
“That on or about the 18th day of June, 1,952, while acting in the course and scope of his employment for the employer, petitioner noticed an ulcer ■on the bottom of side,of his left foot near his small toe; that he reported same to Mr. George Th,ornas, Foreman; that he developed a hot fever and his foot began to swell and pain so badly that he was taken home from his work.”
’ In his amended pleading plaintiff, in addition to reiterating the alleged accidental injury to his left heel, as set forth in his original petition, alleged a second accident as' being “ * * * the ulcer which developed on his foot as described above on or about the 18th day of June, 1952; * ' *
, Defendants first filed an exception of no cause or right of action which was overruled and which has been abandoned.. ■ In addition to the answer, constituting a general denial of the, allegations of plaintiff’s petition, upon conclusion of trial of the case defendants filed a plea of prescription based upon the contention that the evidence adduced on trial established the fact that the only afccident suffered by plaintiff, that is, the injury to his left heel, occurred on March 3, 1952, and setting forth the fact that the petition in this suit was filed June 2,1953.
Neither the minutes nor the judgment reflect any action taken by the district judge on the plea of ■ prescription, although *342 it is noted that in his brief statement of reasons for judgment the judge referred to the fact that the evidence showed that plaintiff suffered a minor injury on June 3, 1952. In view of the failure of the judgment to make pronouncement upon the plea of prescription it must be considered that the same was tacitly overruled by the court. Counsel for defendants re-urge the plea of prescription as well as their contention on the merits that plaintiff has failed to show any accident, or, alternatively, any causal connection between any accident and the disabling amputation.
The testimony in the instant case, both lay and medical, is singularly free from any substantial conflict. Plaintiff testified that on June 3, 1952, while in the course of his employment, a loaded buggy was accidentally pushed against his left heel, breaking the skin. This incident is established beyond any question of doubt, but it is equally well established that the injury complained of consisted only of a minor scratch on plaintiff’s left heel, which was immediately treated by his foreman, the treatment consisting of the application of methyolate and the protection of the skinned area by the use of hand-aids. According to plaintiff’s own testimony the injury healed completely and without incident in the course of a few days. More than two weeks after the accident, on June 18th, an ulcerated condition of the left foot developed, which condition was described by plaintiff as being located on the side of his foot and heel. However, both plaintiff’s wife and his attending physician, Dr. W. L. Bendel, who performed the amputation and who testified on trial as a witness for plaintiff, attest the fact that the ulcerated condition was in the vicinity of the small toe of the left foot.
It was definitely established that plaintiff, unknown to his employer, had suffered from a serious diabetic condition during the entire period of his employment, which began in the year 1948, and for some .time prior thereto. For something more than a year immediately preceding his employment by defendant, plaintiff had been employed in the Wright-Bendel Clinic, during which time Dr. Bendel had discovered plaintiff’s diabetic condition and had repeatedly warned him to be careful with his diet and to maintain his treatment by insulin injections which were administered to plaintiff during the remainder of the period of his employment at the clinic.
We have examined plaintiff’s testimony repeatedly and have been completely unable to find anything which could be accepted as relating the scratch on his left heel, which was accidentally sustained, to the ulcerated condition of or in proximity to the' toes of the left foot which eventually necessitated the amputation of the leg. Nor do we find in plaintiff’s testimony any indication of the occurrence of an accident on June 18th.
The testimony of the expert witnesses tendered by both plaintiff and defendant incontrovertibly leads to the conclusion that plaintiff’s condition and the necessity for the amputation were entirely unrelated to any accidental injury of any kind or nature. We are particularly impressed with the following testimony given by plaintiff’s, witness, Dr. Bendel:
“Q. Doctor, do you recall the date-upon which you amputated the leg of' one Ike Robinson the plaintiff in this case? A. Yes; July the 11th, 1952.
“Q. Doctor, on what date were you-first consulted on account of the injury —any injury that may have been received by Ike Robinson ? A. Let me — if I may I’ll put it this way; Ike was admitted to the hospital on June 28th, 1952, but he had been treated by my office nurse for quite some time prior to that for an ulcer between his little toe and his toe adjoining; nor, how long I can’t tell you. As I explained to you outside just now Ike use to be an employee of the clinic and for that reason, no record was made because we didn’t charge Ike and we had no definite record of the length of time that I had seen Ike. I didn’t make any report of' an injury on Ike because I didn’t think it was an injury involved.
“Q. Doctor, what were his symptoms or complaints upon admission to- *343 your hospital? A. When Ike was admitted to the hospital his foot had become quite swollen and apparently gangrenous and Ike naturally hated to lose his foot and we played along you might say with the foot hoping that we could control the spread of the gangrene where we would not have to amputate his foot but the condition gradually spread and became so much worse that in order to save his life we had to amputate his foot.
“Q. In observing his foot, doctor, what physical findings, if any, did you find? A. You mean at the time he was admitted to the clinic?
“Q. Yes, sir. A. Well, it was swollen and it was discolored and there was some drainage on the dorsum of the foot near the little toe.
• “Q. Now, was there an ulcer — is that a sore near the small toe? A. Yes, there was.
“Q. Doctor, are you stating positively that Ike Robinson was a diabetic patient previous to this time? A. Ike hád been a diabetic for years. He worked for 'the clinic and I don’t remember exactly what was the reason why we suspected Ike’s diabetes or why we found it, but I have a recollection that he got weak or tried to fall out or something and we checked his blood and found him with a blood sugar of over — I think’the first time it was 250 or 300; anyhow, it was high, That was the first time we discovered Ike’s diabetes; that was while he was employed at the clinic and he stayed there at the clinic and 'worked for quite a time after that, I don’t remember how long.”
And on cross-examination the witness said, in part:
“Q. Doctor, if you ran a pre-em-ployment examination on Ike Robinson at a time when he had insulin in his blood system, would you be able to determine his diabetic condition from the approved test? A. No.
“Q. So that anyone administering a pre-etnployment physical examination would be limited in discovering diabetes under those conditions ? A. That’s right.
“Q. Do you think it would be negligent on the part of an examiner not to discover it? A. I sure wouldn’t; I believe it would be negligence on the part of the person who is being examined not to tell the examiner that he had diabetes.
“Q. And we know of our own knowledge that Ike Robinson had diabetes" and you had told him that he had diabetes before he went to work for United Gas Corporation? A. That’s right.
“Q. And I believe you have said that you know from the tests made that Ike did not maintain his diet or maintain his insulin and that he was in trouble from time to time because of his failure so to do? A. That is correct.
“Q. Do* you recall any specific warnings that you gave Ike or any arguments that you gave him as to why he should maintain his diabetic balance? A. I told Ike on numbers of occasions When he worked for the clinic and on other occasions when he was not employed by the clinic that if he didn’t take care of himself he was going to get into trouble, and I even told him that — ‘Ike you are going to wind up some day in a diabetic shock or diabetic coma or maybe a gangrene if you don’t learn to take care of yourself and. watch what you are doing’. I told him that on a number of times.
“Q. His wife has testified that when this ulcerated area. on the underside of his foot was next to his little toe on the left foot, that when that came the foot was swollen from the midways down to the toes, is that a typical development of that condition? A. That is a result of his—
*344 “Q. And which way does that swelling really radiate, doctor? A. It radiates upward. i
“Q. Would come from the ulcer— the diabetic ulcer up toward the base of the foot? A. And would go upward, if it is started from above you just wouldn’t know where to amputate. I mean you would just be oüt of luck.'
“Q. And Ike gave you no history of any accident which had brought any trouble to him? A. No.
“Q. And you in your handling believed it to be a simple case in which a diabetic allowed himself to get out of control and suffered the consequences? A. That is correct.”
Counsel for plaintiff strenuously urges that the determination of the instant case should be controlled by the precedent of our finding in Ray v. International Paper Co., La.App., 68 So.2d 803, The facts in the two cases are so entirely at variance as to preclude, in this case, the applicability of the reasons upon which we sustained our finding in the Ray case. In that case the occurrence of the accident was conclusively established, the circumstances surrounding the accident and the immediate result, which was concerned with the bursting open of the plaintiff’s foot, were established by the overwhelming preponderance of the testimony, and the connection between the accident and the resulting amputation admitted of not the slightest dispute.
In our opinion there is no question as to the correctness of the conclusion of our learned brother of the District Court which rejected plaintiff’s demands after trial on the merits.
Although we- have chosen to predicate our judgment primarily upon the record as made up on trial on the merits of the case, we, nonetheless, feel impelled' to give 'attention to the plea of prescription which has been ably re-urged by counsel for defendants on this appeal; ■ - ■
Careful consideration of the testimony relating -to the date of the accidental injury to plaintiff’s left heel persuades us to the conclusion that the district judge was manifestly in error in finding that, the date of such accident had been established as being June 3, 1952.
The overwhelming preponderance of the testimony of numerous witnesses, in our opinion, establishes the date of the accident as being March 3rd instead of June 3rd. The witnesses testified with certainty as to the occurrence of the accident, as to the job upon which the crew of laborers was working at the time, and as to the condition of the weather. Accordirig to testimony from the work records of the defendant employer the job upon which the crew was working on March 3rd, and in the course of which plaintiff was accidentally injured, is shown to have been in progress on March 3rd, whereas on June 3rd the crew was engaged on an entirely different job. Further, the testimony establishes the fact that the day upon which plaintiff sustained the accidental injury was a rainy day, and the testimony of a witness in charge of the official Weather Bureau records not only established the fact that it was raining on March 3rd, but that there was no precipitation in Monroe between the dates of June 1st and June 19th. Finally, we point out the conclusive nature of the testimony of Mr. George Thomas, the foreman of the crew of which plaintiff was a member who had applied methyolate to the scratch, on plaintiff’s heel following the minor accident and had given him the band-aids .for application thereto. Thomas testified that he remembered the accident and further recalled that on the afternoon of the same day he served as a pallbearer at a funeral and that it was raining at the time. His testimony as to the date of the funeral and his service as pallbearer was corroborated by the daughter of the decedent.
On the basis of the above well-es-tabli’shed facts we; are convinced that the date of the accident has been established *345 as being March 3, 1952, and in view of the filing of plaintiff’s petition on June 2, 1953, it follows that the plea of prescription should have been sustained.
It is noted that the judgment in favor of defendant rejecting plaintiff’s demands taxed the costs of court against plaintiff. The suit was prosecuted in forma pauperis and the judgment should therefore be corrected to the extent of eliminating the assessment of costs, and, as so amended, the judgment appealed from is affirmed.