236 So.2d 637 (1970)
Mrs. Bettie Vines NORRED, Plaintiff-Appellant,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
No. 11444.
Court of Appeal of Louisiana, Second Circuit.
May 26, 1970.
Rehearing Denied June 29, 1970.
*638 David T. Caldwell, Leon H. Whitten, Jonesboro, for plaintiff-appellant.
Theus, Grisham, Davis, Leigh & Brown, by J. C. Theus, Monroe, for defendant-appellee.
Before AYRES, DIXON and PRICE, JJ.
AYRES, Judge.
Plaintiff, widow of D. C. Norred, late an employee of L. J. Alexander, seeks to recover, of the employer's insurer, workmen's compensation plus penalties and attorney's fees due because of Norred's *639 death from alleged accidental causes arising out of and during the course and scope of his employment. Plaintiff seeks, also, to recover hospital and medical expenses incurred in the treatment of her husband's injuries, as well as funeral expenses incurred for his interment. The trial court found plaintiff had not sustained the burden of proof imposed upon her by law and established to a legal certainty and by a preponderance of evidence that Norred's accidental injuries caused or contributed to his death. Plaintiff's demands were accordingly rejected and she prosecutes this appeal to this court.
This case was tried upon an agreed statement of facts and the depositions of three medical experts. The issues therefore concern (1) a question of the causal relationship, if any, between the injuries sustained by Norred and his death, and (2) a question of plaintiff's entitlement to penalties and attorney's fees, as well as the other claims for which she has made demand.
Norred, employed by Alexander to operate a dump truck in the hauling of gravel, sand, and other materials or supplies used in Alexander's construction business, sustained accidental injuries to a hand when, on August 26, 1965, the tail gate of the truck he was operating accidentally fell, striking his left arm, wrist, and hand. Norred, at the time, was suffering with an advanced state of diabetes, an affliction theretofore endured for many years.
Norred was first seen following the accident by Dr. Robert Louis Firnberg at the Hodge Clinic on either the date of the accident or the following day. Plaintiff complained, on that occasion, of injuries sustained as above noted. There were no broken bones nor visible breaks in the skin. An oral enzyme was given to reduce swelling and to aid in blood absorption in order to hasten the healing process. On the next occasion that Norred was seen by Dr. Firnberg, a few weeks later, probably in September, 1965, Norred's hand, as a result of the enormous swelling, was then tripled in size with infections of cellulitis and gangrene as well as a staphylococcus infection. He was described by the doctor as a very sick man, with his diabetes way out of control.
About this time Norred was also seen at the Hodge Clinic by Dr. Frank X. Cline, Jr., an orthopedist. Dr. Cline found that there was gangrene in the fifth finger and an impending gangrene in the fourth finger. The fifth finger was later removed by Dr. Firnberg.
November 4, 1965, Norred's diabetic condition having continued to be out of control, Dr. Firnberg referred him to Dr. Cline who in turn called in Dr. Mortimer Raphael, an internist, with reference to Norred's diabetic condition. Upon this referral Norred was placed in a Monroe hospital from November 4 to December 2, 1965.
When first seen by Dr. Raphael, Norred was found to have an infected hand, and, due to this infection and an infection of the kidneys, it was found his diabetes was out of control. Included in his diagnosis, in addition to the above and his severe diabetic condition, was an osteomyelitis of the hand, due to staphylococcus, a pus-forming organism, and an acute pyelonephritis of the kidneys. Development of degenerative vascular complications and arteriosclerosis, with which Norred was also suffering, was said to be characteristic of diabetic patients. There was said to be a likelihood of the development of hypertension from the kidney infection, from which strokes were likely to develop. Norred later developed or became afflicted with diabetic neuropathy, explained as a deterioration or destruction of nerves by or through diabetes. The gangrene or blood poisoning was said to have been brought about by the insufficiency of the blood supply, particularly to the extremities of the body. This development required the amputation of Norred's little finger.
The osteomyelitis was described by Dr. Cline as an infection directly related to the *640 injury sustained to Norred's hand. All infections resulting from injuries in a diabetic are difficult to control by virtue of excessive sugar content' in the blood and the lack of insulin therein as well as poor circulation attributable to diabetes.
The consensus of the medical experts was that a diabetic is more prone to infections, arteriosclerosis, and vascular diseases than one free of diabetes. Nor does there appear to be any dissension among the experts that the injuries received by Norred were precipitating causes of the infections which developed in his hand and were sufficient to aggravate Norred's diabetic condition sufficiently to increase the probability of a cerebral accident.
After discharge from the hospital and when subsequently seen by Dr. Firnberg on December 27, 1965, Norred's diabetes was apparently under control. This simply means, according to Dr. Cline, there is no immediate danger that diabetic complications, such as coma or acidosis, are likely to occur, but, however, that vascular complications, like strokes, may occur at any time with the diabetes in or out of control.
During February, 1966, Norred developed a serious "foot drop" through diabetic neuropathy, a deterioration or destruction of nerves through the diabetic process. Norred was fitted with braces on March 1, 1966, by Dr. Cline, to alleviate this loss of control of his feet.
Dr. Firnberg continued as Norred's attending physician. Norred was admitted to the Hodge Clinic August 16, 1966. He died two days later, the cause of which was shown on the death certificate to be a cerebrovascular accident, or stroke.
The crucial question is whether or not there was a causal connection between Norred's injury and his subsequent death. From the record, it appears that despite Norred's diabetic condition he was, prior to the injury, able to keep his condition under control and to engage in his usual activities and perform the duties of his employment. It is neither contended nor shown that, after the accident, he was able to or did do any labor. From the date of the accident, Norred's condition worsened, and the state of his health declined at an accelerated rate, despite periods of apparent remission, until his death.
Dr. Firnberg testified that, in his opinion, there was a direct causal relationship between the injury to Norred's hand and his death. Research concerning diabetes, he testified, would normally substantiate this opinion. He further testified that, if Norred had not received this injury to his hand and the infections therein had not developed, nor had the diabetes gotten out of control, in all likelihood Norred would have remained alive. The existence of infection and the fact the diabetes got out of control, Dr. Firnberg stated, had a direct relationship to the injury.
Drs. Raphael and Cline testified that chances of people with diabetes having strokes are very great, and they agreed the hand injury sustained by Norred aggravated or accelerated the diabetes with which he was suffering and made the infection more difficult to treat; this injury caused the diabetes to further progress, and arteriosclerosis is a natural result of diabetes.
While neither of these doctors would admit, in answer to a direct question, that the hand injury resulted in Norred's death, their testimony, when taken and considered as a whole, substantiates plaintiff's claim there was a causal relationship between her husband's accidental injuries and his death. As heretofore noted, according to Dr. Firnberg's testimony, Norred was never well at any time following the accident. The condition with which he was afflicted, aggravated and accelerated by the injury, produced his death. As for the actual cause of death, it was a "vascular death." This vascular breakdown was directly attributable to diabetes, as aforesaid, the course of which was accelerated by the injury to the moment of his death.
*641 The principle is well established in the jurisprudence that an employer takes an employee as he finds him. A worker who is abnormally susceptible to disability from an accident is entitled to the full protection of the workmen's compensation statute even though the same accident would have caused little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced disability. Thus, an employee's death is fully compensable when precipitated by an industrial accident even though caused, also, by a contributing, pre-existing, dormant physical condition or predisposition.
Malone's "Louisiana Workmen's Compensation," p. 278, § 232;
Hemphill v. Tremont Lumber Company, 209 La. 885, 25 So.2d 625 (1946);
Behan v. John B. Honor Company, 143 La. 348, 78 So. 589 (1918);
Lum v. Employers Mut. Liability Ins. Co. of Wis., 216 So.2d 889, 892-893 (La.App., 2d Cir. 1968);
Parish v. Fidelity & Casualty Co. of New York, 124 So.2d 234, 238 (La. App., 2d Cir. 1960cert. denied);
Brewster v. City of Shreveport, 115 So. 2d 229 (La.App., 2d Cir. 1959);
Ceasar v. Calcasieu Paper Company, 102 So.2d 314 (La.App., 1st Cir. 1958);
Guillory v. Reimers-Schneider Company, 94 So.2d 134 (La.App., 1st Cir. 1957);
Lyons v. Swift & Company, 86 So.2d 613 (La.App., 2d Cir. 1956cert. denied);
Michel v. Maryland Casualty Company, 81 So.2d 36 (La.App., 1st Cir. 1955);
Ray v. International Paper Company, 68 So.2d 803 (La.App., 2d Cir. 1953cert. denied).
Thus, this case comes within the rule that an employee disabled by accident is not to be denied compensation merely because he was already afflicted with a disease which, in its ordinary progress, might have caused the disability eventually, even without any accident and where the accident merely induced the disability.
Robichaux v. Realty Operators,
195 La. 70, 196 So. 23 (1940);
Behan v. John B. Honor Company,
supra;
Livaccari v. Fidelity & Casualty Co. of New York,
118 So.2d 275 (La.App., Orl. 1960 cert. denied).
In the case of Lyons v. Swift & Company, supra, this court found that plaintiff's stomach cancer was activated, aggravated, and accelerated by a blow received from the handle of a hand truck. This court made the following observation which we deem appropriate to the present case:
"Although there is a conflict in the medical testimony as to whether plaintiff's pre-existing condition was aggravated by the trauma to his abdomen, yet, to our minds, one of the strongest, single factors supporting plaintiff's claim is that until the very date and moment of the accident and for several years prior thereto, he was in apparent good health, robust, strong, able to do and doing heavy, strenuous labor. From that day and moment forward he has been totally and completely disabled and unable to perform any work of a reasonable character. There must have been a cause for this sudden change. Plaintiff has advanced a substantial reason for such change. The evidence preponderates in his favor. No contrary view is urged by defendants other than that plaintiff had a pre-existing carcinoma of the stomach, which, notwithstanding the accident and injury sustained by plaintiff, was the sole and only ground for plaintiff's condition and that such disease could not be and was not aggravated, activated or accelerated by the injury received in the aforesaid accident."
86 So.2d 613, 621.
*642 This court, in Ray v. International Paper Co., supra, in an opinion of which the late Judge George W. Hardy, Jr., was the author, held that an employee who suffered from diabetes and whose leg and foot were in gangrenous condition, and who, while moving a roll of paper for his employer, suffered a rupture of an ulcer on his foot which necessitated amputation of the leg, sustained the burden of proof that, although amputation would have been eventually necessary in any case, the strain aggravated a pre-existing condition and was a contributing factor to the injury; and, therefore, the employee was entitled to the benefits of the workmen's compensation statute.
Cited as a basis for this court's conclusion in the Ray case was the Illinois case of Gudeman Co. v. Industrial Commission, 399 Ill. 279, 77 N.E.2d 807 (1948). In the cited case, the widow of John Schneider sought workmen's compensation because of her husband's death. The employee had been afflicted with diabetes for about 20 years prior to October 3, 1944, when in the line of duty he bumped his toe on a heavy metal pan, producing an injury from which complications developed. He was seen regularly by a physician until November 22, 1944, when the condition became serious and a progressive gangrene was discerned. Schneider was then taken to a hospital where, on November 24, 1944, his right leg was amputated above the knee. He was taken home in a wheelchair December 21, 1944. Headaches developed January 5, 1945, and, on the 7th he was again taken to the hospital where death occurred three days later from cerebral thrombosis. The only fact in dispute in that case was whether there was a causal connection between the injury and the death. The Illinois Supreme Court found there was substantial evidence, through a sequence of events, upon which the Industrial Commission could base its opinion that there was a causal connection between the injury and death.
It was pointed out in Ray v. International Paper Co., supra, that:
"The only distinction between the Illinois case and the one under consideration is the difference between an injury resulting from bumping a toe and one resulting from the breaking open of a foot as the result of strain and pressure. It is to be observed that the opinion discussed the principle identical with that which has been many times enunciated by the courts of this state to the effect that mere possibility is not sufficient to sustain an award. In the instant case we do not think the evidence adduced on behalf of plaintiff can be dismissed as mere possibility or even probability. To the contrary we think plaintiff has made out and established a consistent causal connection between the occurrence of July 1st, which must be considered as an accident, and the amputation of his leg." 68 So.2d 803, 806.
The instant case, on a factual basis, is similar to that of Ray v. International Paper Co., supra, and the Illinois case therein quoted. We are unable to note any material distinction.
Upon examination of all the medical testimony contained in the record, an agreement among all the experts as to certain facts is made clear. Diabetics of long standing, such as the deceased herein, are very susceptible to infections, especially in their extremities. This is due to the vascular breakdown directly attributable to diabetes. Severe infection aggravates diabetes and may cause it to get out of control. When diabetes is out of control an infection is more difficult to treat. A diabetic, whether the diabetes is in or out of control, is prone to strokes.
Norred sustained a vascular death; hence, the chain of causal connection is apparent. The same result has been obtained by employees suffering heart attacks during or subsequent to unusual activity or physical exertion.
*643 Starks v. Hardware Mutual Casualty Company, 231 So.2d 657 (La.App., 2d Cir. 1970);
Roberson v. Michigan Mutual Liability Company, 90 So.2d 465 (La.App., 2d Cir. 1956cert. denied);
Sepulvado v. Mansfield Hardwood Lumber Company, 75 So.2d 529 (La.App., 2d Cir. 1954).
A claimant in a compensation case must establish his claim by a preponderance of evidence. But, as stated in Russell v. Employers Mutual Liability Ins. Co. of Wis., 246 La. 1012, 169 So.2d 82, 88 (1964), this does not mean that he must establish the exact cause of his disability, but only that he demonstrate, by a preponderance of proof, that the accident he sustained has causal relationship with his disability.
We find the testimony of Dr. Firnberg convincing. He treated the patient continuously, from the inception of his injury until his death, except during the month of November when he was under the care and treatment of Drs. Raphael and Cline, approximately nine months before his death. The trial court concluded that, of the three doctors who testified, the opinions of Drs. Raphael and Cline were entitled to greater weight than the opinion of Dr. Firnberg. In support of this conclusion, these cases were cited:
Williams v. New Amsterdam Casualty Company, 121 So.2d 760 (La.App., 2d Cir. 1960);
Walker v. Monroe, 62 So.2d 676 (La. App., 2d Cir. 1953);
Rider v. R. P. Farnsworth Co., 61 So.2d 204 (La.App., 2d Cir. 1952);
Price v. T. L. James & Co., 53 So.2d 182 (La.App., 2d Cir. 1951).
We do not challenge the correctness of the rules relied upon in the cited cases, but these rules are inapplicable in the instant case.
Dr. Cline is an orthopedist. Norred's condition was not particularly within the field of his specialty. An internist is a physician who indiscriminately treats diseases or ailments of man's internal organs. Dr. Firnberg, who testified to treating diabetes every day, was in an excellent, if not a better position, from his long and continuous treatment of this particular patient, soon after his injury to the day of his death, to evaluate the conditions leading to Norred's death. The testimony of Drs. Raphael and Cline corroborates that of Dr. Firnberg in that the injury could, and there was a possibility that the accident did, contribute to the worsening of the employee's condition and hasten his death. This outweighs, in our opinion, the bare statement that the injuries sustained had no accelerating effect upon Norred's condition hastening his death. The chain of facts and circumstances to which we have referred support Dr. Firnberg's finding of a causal relationship between "accident" and "death" in the instant case.
Under the language of the statute in effect at the time Norred sustained accidental injuries and subsequently met his death, the period for which compensation was payable to a surviving widow was during her dependency, not exceeding, however, 400 weeks less the number of weeks Norred, prior to his death, was paid compensation. LSA-R.S. 23:1231 and 1233. It was stipulated that compensation was paid to Norred covering a period of 50 weeks. The rate of compensation was also stipulated at $19.50 per week, and that the funeral expenses exceeded the maximum of $600.00 for which defendant is liable; and, moreover, that the insurer had paid hospital and medical expenses exceeding the then statutory maximum for which the defendant was responsible. A stipulation was likewise entered with respect to the expert-witness fees.
We find no basis for the allowance of penalties and attorney's fees. Defendant's refusal to pay compensation was not arbitrary. Its refusal to pay and the *644 defense urged in this case were in good faith.
Therefore, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiff, Mrs. Bettie Bines Norred, against the defendant, The Travelers Insurance Company, for the full sum and weekly compensation of $19.50 during plaintiff's continued dependency, not, however, for a period exceeding 350 weeks beginning August 25, 1966, with 5% per annum interest on each of these weekly installments from its maturity until paid, together with $600.00 for funeral expenses, with 5% per annum interest thereon from judicial demand until paid, and together with all costs, including expert-witness fees for Drs. Mortimer Raphael, Frank X. Cline, Jr., and Robert Louis Firnberg in the sum of $50.00 each, herein taxed as cost.
It is further ordered, adjudged, and decreed that plaintiff's counsel's fees, payable out of plaintiff's award, be, and they are hereby, fixed, as provided by statute, LSA-R.S. 23:1141, at the rate of 20% of the first $5,000.00 of the award and 10% of the portion of the award exceeding $5,000.00.
Reversed and rendered.
PRICE, Judge (dissenting).
I must respectfully dissent from the opinion of the majority in this case. The trial judge rejected the claim of the widow of the decedent for workmen's compensation benefits on a finding that the medical evidence was not sufficient to establish by a preponderance of the evidence a causal connection with the minor injury by decedent and his death which occurred some ten months later.
Plaintiff offered the testimony of three physicians in support of her demands. Two of these doctors testified that in their best medical opinion there was no causal connection between the injury and the death of plaintiff's husband. One of these physicians is an internist, specially qualified to treat a metabolic condition such as diabetes. The testimony clearly establishes that the infection in Norred's hand was healed and his diabetic condition was under complete control on his release from the hospital on December 2, 1965. The medical evidence in the record also establishes that a person having diabetes as long and severely as Norred gradually develops arteriosclerosis from a continuous depositing of fatty materials in the inner walls of the arteries thus restricting their capacity to function properly. It was logically explained by the medical testimony that such a condition accrues over a period of years and cannot be compressed into just a year or two.
The majority opinion recognizes that a person with diabetes of the severity of Norred is prone to have a stroke at any time, whether his diabetic condition is in or out of control. Had Norred's death occurred while his diabetes was out of control due to the infection which developed in his hand, then a direct causal connection would have been established. However, all three physicians testified that the diabetic condition of Norred from December 2, 1965, until his death on August 18, 1966, was within normal limits.
The trial judge followed the rule set forth in Williams v. New Amsterdam Casualty Co., 121 So.2d 760 (2d Cir., 1960), and cases cited therein, that in evaluating medical testimony the opinion of a physician specializing in a particular field of medicine is entitled to greater weight than the opinion of a general practitioner. This rule is particularly applicable to this situation as Dr. Raphael, the internist, and Dr. Cline, neither of whom found any causal connection, were treating physicians selected by Dr. Firnberg, and not physicians who examined Norred on behalf of defendant.
This Court, in the case of Davis v. Western Casualty and Surety Company, *645 159 So.2d 309 (2d Cir., 1963,) declared the burden of proof in a workmen's compensation suit as follows:
"The general rule, well recognized in all civil cases, including workmen's compensation matters, is that plaintiff bears the burden of proof and must establish his claims to a legal certainty by a reasonable preponderance of the evidence. Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734; Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Roberts v. M. S. Carroll Co., La. App.2d Cir., 1953, 68 So.2d 689; Page v. Tremont Lumber Company, La.App., 2d Cir., 1958, 108 So.2d 1; Smith v. Olin Mathieson Chemical Corporation, La. App.2d Cir., 1961, 133 So.2d 913; Ware v. Industrial Timber Products, Inc., La. App.3d Cir., 1962, 147 So.2d 672."
The trial judge has followed this rule as declared by this court, and his findings should not be disturbed where no manifest error is present.
Rehearing denied.
PRICE, J., dissents from refusal.