CULPEPPER, Judge.
Defendants appeal from a judgment on the merits awarding plaintiff workmen’s compensation benefits for total and permanent disability.
The issues are (1) the occurrence of an accident or injury, (2) any disability caused by the alleged accidents and (3) defendant’s special plea of prescription.
The general facts show that plaintiff was employed as an operator of a regenerative caustic unit in the oil refinery of defendant, Cities Service Oil Company. He watched the gauges, climbed towers, turned valves with wrenches, and, in emergencies, had to perform these duties quickly and under strenuous conditions. We think the evidence clearly shows plaintiff’s duties involved strenuous physical labor.
The first issue is whether any accident is proved. Our jurisprudence is settled that plaintiff bears the burden of proving an accident by the preponderance of evidence. Guillory v. New Amsterdam Casualty Co., 244 La. 225, 152 So.2d 1 (1963). Also, the testimony of plaintiff alone may be sufficient to prove an accident, provided there is nothing to discredit him and provided his statements are supported by the surrounding circumstances. Brister v. Great American Insurance Co., et al., La.App., 171 So.2d 769 (3rd Cir.1965) and the cases cited therein.
Plaintiff contends he sustained his initial back injury in January of 1962 when, during an emergency created by the bursting of a frozen water line, he “shimmied” up a pipe to close a valve and fell 12 or 15 feet to the floor “flat footed”. Plaintiff testified the immediate pain in his back was such that he had to lay down for a few minutes. However, no other witness saw the accident, plaintiff did not report the incident, as required by company rules, and he did not seek medical attention or lose any time from work.
The next accident alleged in plaintiff’s petition was in March of 1962, he injured his back again while pulling on a wrench. During the trial plaintiff gave no details of this alleged accident. However, the records at the plant first-aid station show that on March 19, 1962 he reported there for “pain in back” and a drug was prescribed. The record also shows that from March 9, 1962 to March 15, 1962, plaintiff was under the care of Dr. H. S. Snatic for a condition diagnosed as “prostatic low back pain”. Also, plaintiff drew “sick benefits” from his employer for the period, March 12, 1962 through March 18, 1962. Here again, there were no witnesses to the accident and no report' was made to the employer. Also noteworthy is Dr. George P. Schneider’s statement that on December 6, 1962 plaintiff gave him a history of having strained his back while at work several times, including an episode in March of 1962.
The next alleged accident was in October of 1962. Plaintiff testified he strained his back “real bad closing a valve off overhead, * * * ” Again there were no witnesses to the accident, plaintiff made no report of it, and lost no time from work. However, the plant first-aid station record shows that on October 13, 1962 and again on November 1, 1962 plaintiff went there for “pain in back” and a drug was prescribed. Also, the history taken by Dr. Schneider on December 6, 1962 shows plaintiff “stated his last episode of injury occurred while turning a valve in October, 1962. * * * ”
As noted above, plaintiff’s first visit to Dr. Schneider, an orthopedic specialist, was on December 6, 1962. Dr. Schneider’s report of this initial examination merits partial quotation:
“The above patient was initially seen by me on December 6, 1962. At that time he stated that about March, 1962, he strained his back while at work and had had repeated episodes of back pain and catching and re-injury since that *833 time. He stated his last episode of injury occurred while turning a valve in October, 1962 and he complained of back pain going into both hips and thighs as far as his knees. He stated his discomfort had been so severe at times he would be unable to straighten up after periods of working in a bent over position and at other times would be unable to bend his trunk without low back pain. He stated he had been on muscle relaxents at intervals, apparently prescribed by his company physician.
* * * * * *
“OPINION: It is my feeling that this patient was suffering from a progressive degenerative process at the level of the Sth lumbar intervertebral disc very possibly as a result of multiple episodes of injury to his lower back. He was accordingly placed on a routine of conservative treatment including the use of a lumbo-sacral support and medication.”
Plaintiff remained under Dr. Schneider’s treatment and went on sick leave from December 6, 1962 to about June 1, 1963, drawing 12 weeks full pay and thereafter one-half pay. Then, on Dr. Schneider’s recommendation, plaintiff returned to work, with the reservation that he perform no strenuous labor. On June S, 1963, plaintiff was examined by Dr. J. W. Crookshank, the plant physician and medical director. His diagnosis was essentially the same as that of Dr. Schneider, i. e., a narrowing of the intervertebral space between L-5 and S-l, caused either by a progressive degeneration or a herniation of the disc.
Plaintiff contined to work until a few days after the last alleged accident on September 12, 1963, when he tripped over a wire and fell against a large floor fan. This accident was seen by a fellow employee, Dudley Carver, who testified that plaintiff “ran into” the fan and then held his back and appeared to be in pain. Following this accident plaintiff worked a day or two and then was off a few days and finally went back to Dr. Schneider on September 19, 1963. A report by Dr. Schneider, dated October 26, 1963, states the following :
“It is my feeling after prolonged follow-up and repeated examination of this patient that although he is able to carry out a limited work regimen to the extent that there may be almost complete remission of his manifestations, both subjectively and clinically, I feel that he will be unable to continue at any job requiring any strenuous activity without exacerbation of his problem arising. At times his low back flare-ups have been spontaneous in origin and I feel that this plus repeated low grade injuries indicates the inability of the patient to perform manual labor. I feel, as noted, that the ultimate solution to his problem is spinal fusion, but prior to this I feel that lumbo-sacral myelography should be performed to preclude any underlying disc protrusion, which if it presents, should also be treated at the time fusion is carried out.”
Plaintiff did not return to work after September 19, 1963 and his employment was terminated.
Dr. Crookshank, the plant physician and medical director, examined plaintiff on October 16, 1963 and again found the narrowed intervertebral space at L-5. But Dr. Crookshank was of the opinion plaintiff could return to work, though admittedly with pain and discomfort and the possibility of further episodes of injury.
On November 14, 1963 plaintiff was examined by Dr. Charles V. Hatchette, an orthopedic specialist, whose findings and diagnosis were essentially the same as those of Dr. Schneider, and who was of the opinion that plaintiff was disabled to perform any strenuous labor.
In support of its contention plaintiff has not proved an accident, defendant points out *834 there were no witnesses, except plaintiff himself, to the alleged accidents of January, March and October of 1962; that plaintiff did not report any of these accidents to his employer, as required by plant rules well known to the plaintiff; that he didn’t lose any time from work immediately following these accidents, except a few days in March of 1962.
Defendant also argues strenuously that plaintiff fabricated the accidents in 1962 and "staged" the accident on September 12, 1963 as part of a scheme to be absent from work and draw almost full pay in sick benefits, while at the same time earning an equal amount working as an insurance adjuster. Defendant argues plaintiff was “building up" a back case in order to claim workmen’s compensation if the employer discovered he was doing other work while on sick leave, in violation of company rules.
Although these circumstances certainly tend to discredit plaintiff, there are others strongly corroborating him. Most important is the expert medical testimony. The history given Dr. Schneider at an unsus-picious time in December, 1962 describes at least the accidents in March and October, 1962. The later history in October, 1963 describes the accident of September 12, 1963. The very nature of plaintiff’s back trouble, i. e., a degenerative condition probably caused by multiple injuries, strongly supports the accidents. Of course, the accident of September 12, 1963 was verified by an eye witness. It was clearly proved. Also, there is no evidence of any low back trouble before January of 1962.
Considering all of the circumstances, including the finding of facts by the trial judge, we think the accidents were proved.
Defendants’ next argument is that plaintiff’s degenerative back condition antedated the alleged accidents and was not caused or worsened by them. Defendants suggest that the trouble may have started with an automobile accident in which plaintiff was involved in 1956 or another in which he was involved in 1957. The latter injury led to litigation which plaintiff compromised for $3,250. However, there is no testimony whatever that plaintiff injured his back in the 1956 accident. As to the 1957 accident, the testimony of plaintiff is definitely corroborated by Dr. Schneider that plaintiff suffered only a “whiplash" injury to the neck and shoulders and did not injure his low back. Defendant’s attempt to show plaintiff’s present condition originated in these earlier automobile accidents is without merit.
There is no evidence that plaintiff suffered any back trouble before the first on the job accident in January of 1962. The medical testimony clearly shows that these work connected episodes of injury caused or at least worsened plaintiff’s degenerative back condition, until it finally developed into total disability. It is our conclusion plaintiff’s disability was caused or at least aggravated by the accidents.
Defendant’s special plea of prescription'is based on LSA-R.S. 23:1291 requiring that the employee give notice of the injury to the employer within six months after the date thereof. Of course, this argument pertains only to the accidents of January, March and October of 1962, because plaintiff did give notice to defendant within six months after the injury on September 12, 1963. In any event, the landmark case of Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952) holds that when a claimant sustains successive on the job injuries, but continues to work, prescription does not - begin to run until the injuries manifest themselves into a condition of total disability. This answers defendant’s plea of prescription.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.