FRUGÉ, Judge.
Plaintiff-appellee, Bernard Higginboth-am, sued for workmen’s compensation benefits. The District Court entered judgment awarding claimant total and permanent disability benefits, and the employer and its insurer appealed. We affirm.
On September 3, 1970, while the plaintiff was performing duties arising out of and during the course and scope of his employment with his employer, Eastern Logging and Perforating Company, he became unconscious and was rushed to Memorial Hospital in Lake Charles, Louisiana, at which time he was attended by Dr. Penton. The plaintiff was in an unresponsive state and Dr. Penton feared brain damage so he was rushed to Baptist Hospital in Beaumont, Texas, where he was treated by Dr. Harry Starr, a neurosurgeon. Plaintiff eventually regained consciousness, but effects of incapacity remained.
On April 27, 1971, plaintiff visited Dr. James Brown of Houston, Texas, who continued to see the plaintiff for eight more visits. The plaintiff was also examined by Dr. Richard Levy of New Orleans on October 22, 1971. The medical experts agree that the plaintiff experienced arteriovenous abnormality in the left side of the brain with hemorrhage. Plaintiff is presently functioning at the borderline intellectual level which is significantly below his past optimal level. In addition, he suffers from severe depression, stutters, experiences periodic lapses of memory, and is unable to function intellectually. In short, plaintiff is totally and permanently disabled.
In brief appellants make the following specification of errors: (1) The District Court erred in finding that the plaintiff sustained the burden of proof required to establish that there was an “accident” as defined by the Workmen’s Compensation Act; (2) the District Court erred in finding that the plaintiff sustained the burden of proof that his disability was attributable to a work-connected accident.
In support of the first specification of error, appellant contends “the primary basis for discrediting the alleged occurrence of an accident is that there were no witnesses to the accident, no immediate evidence of the accident, and only the self-serving, inconsistent declarations of the plaintiff to support the occurrence of an accident.” Specifically, appellants place emphasis on the fact that plaintiff testified he was sitting in the chair with his feet crossed on the desk immediately prior to the fall, whereas in another instance, he stated he had both feet on the floor; that there is a conflict in testimony as to the period of time subsequent to the accident before plaintiff started feeling the effects; and that there is a conflict as to whether or not a conversation was held between a fellow employee, Mr. Curtis Duhon, and the plaintiff subsequent to the accident.
We find no merit in the first specification of error. The trial record shows that it was plaintiff’s uncontradicted testimony that he was sitting in a chair and attempted to get up when the chair tilted and/or slipped out from under him, causing a blow to his head. The minor disaccordant details surrounding the fall are not persuasive inasmuch as the trial judge emphatically stated that the credibility of the plaintiff was very impressive. We note that the plaintiff was stunned, dizzy, and even partially paralyzed following the accident so that discrepancies as to minutiae will not be accorded much emphasis by this court.
The jurisprudence of this state is to the effect that testimony of the petitioner alone may be sufficient to prove an ac *452 cident, provided there is nothing to discredit him and provided his statements are supported by the surrounding circumstances. Webre v. Service Painting Company of Beaumont, 252 So.2d 675 (La.App. 1st Cir., 1971), Landry v. Employers’ Liability Assurance Corporation, Ltd., 233 So. 2d 624 (La.App. 3rd Cir., 1970), and Lindsey v. Hartford Accident and Indemnity Company, 175 So.2d 831 (La.App. 3rd Cir., 1965).
In brief appellee notes that “defendants have raised only one serious defense to plaintiff’s contention that an accident did, in fact, occur.” Reference is made to the fact that there was no external evidence of any trauma, such as a bump or cut, on the plaintiff’s head despite careful observation by Drs. Penton and Starr immediately after the accident. This argument lacks merit in view of the uncontradicted expert testimony that a blood vessel in the brain can hemorrhage from external trauma without any resulting physical evidence of the external trauma.
In support of its second specification of error, appellants claim that the evidence submitted proved that “plaintiff’s condition arose from a congenital defect which occurred spontaneously and was not precipitated nor aggravated by, or in any way related to the alleged accident or trauma.”
In opposition to this specification of error, appellee argues that “defendants would have this Honorable Court believe that all of the above-mentioned difficulties plaintiff suffers from, all of which occurred immediately after the accident, bore absolutely no relationship to the accident, and would have occurred at the same point in time whether or not plaintiff fell from the chair and struck his head.” (Emphasis theirs). Appellee contends that when this is contemplated in light of the medical evidence, the conclusion is inescapable that the accident must have at least precipitated the injury.
Dr. Starr, neurosurgeon, initially saw the plaintiff on September 3, 1970. He was hospitalized under Dr. Starr’s care until September 30, 1970, and was subsequently examined on a monthly basis thereafter until March, 1971. Dr. Starr concluded that the plaintiff’s hemorrhage was not due to the fall; that is, the condition presently disabling to the patient occurred spontaneously and was completely independent of any fall or trauma.
Dr. Brown, also a neurosurgeon, saw the plaintiff on eight different occasions and performed over 50 separate tests, which led him to conclude that the precipitating factor of the brain hemorrhage was definitely trauma. An extraction from his testimony follows:
“Q. All right, sir. Now, doctor, going further, and accepting that this man never had any difficulty with his head, no dizziness before this accident, that he always worked hard in his lifetime, that he was an intelligent young man, and that he was on his job when he fell out of his chair and either struck his head on the chair or on the floor, and then he became . . . within two minutes he became paralyzed, would you relate the trauma, or the fall in the chair, to his present ailment?
A. I certainly would, on the basis of time factor. I don't see how you could get azvay from it.” (Emphasis theirs).
The District Judge, in oral reasons for judgment, stated:
“Had Dr. Starr been furnished with the history that he did have this type of injury, that his testimony could possibly have, and would probably have resulted in a finding that the accident was the cause of Mr. Higginbotham’s problem.”
We note from a close reading of the testimony of Dr. Starr, that when Dr. Starr in *453 itially diagnosed and obtained the history of the plaintiff “there wasn’t a history of a fall.” The history of the patient only indicated that “he had collapsed at work”. An excerpt from Dr. Starr’s testimony follows :
“Now, the word ‘collapsed’ is a generally used word which would mean that he got sick and perhaps slumped down or put his head on the desk or said T don’t feel good’ or indicated by his condition that he did not feel well and somebody had to help him over and lie him down. There was no history of an injury or type by anyone.”
Plaintiff testified that before the accident he had never suffered from dizziness, black-out spells, speech impediments, memory lapses, numbness in his limbs, or been seriously ill. His former wife testified that it was only after the accident that plaintiff had a bad temper, stuttered, or suffered from severe headaches. Plaintiff’s mother stated that plaintiff had never had any of these symptoms prior to the accident.
Although there is an apparent conflict in the medical testimony as to whether plaintiff’s condition was caused by the trauma, yet, to our minds a strong factor supporting plaintiff’s claim is that until the very day and moment of the accident and for several years prior thereto, he was in apparent good health, robust, strong, able to learn and participate in strenuous labor. From that day and moment forward, he has been totally and completely disabled and unable to perform any work of a reasonable character. There must have been a cause for this sudden change. Plaintiff advanced a substantial reason for such change and the District Court found that the plaintiff’s present disability was caused by the accident. See Norred v. Travelers Insurance Company, 236 So.2d 637 (La. App. 2nd Cir., 1970), certiorari denied at 256 La. 842, 239 So.2d 354 (1970), and numerous cases cited therein.
In this instance of appellate review, the ultimate question is whether the trial court committed manifest error in its findings. We are unable to find such in the present record.
For the foregoing reasons the judgment appealed from is affirmed at appellants’ cost.
Affirmed.